CUSTIN, Appellant, vs. THE CITY OF VIROQUA, Respondent.

*November 6 — November 23, 1886.*

*(1) Statutes: Amendment: Mistake in recital. (2, 3) Excise laws: Exaction of excessive license fee: Voluntary payment.*

1. Where an amendatory act first declares what the amendments shall be and then undertakes to recite the law as it will read when so amended, a mistake or omission in such recital will not defeat the intention of the legislature. So *held* as to sec. 10, ch. 322, Laws of 1882 (amending sec. 1548, R. S.), where in the recital of the section as amended the maximum amount to be paid for liquor licenses is omitted.

2. Where, in good faith but under a misapprehension of the law, a village board demanded an excessive sum for a liquor license, one who paid such sum cannot recover back the excess.

3. The fact that business necessities compelled the obtaining of the license will not alter the voluntary character of such payment.

APPEAL from the Circuit Court for *Vernon* County.

The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

This action is brought to recover of the respondent city $300 which it is alleged was illegally and unlawfully received by the former village of Viroqua for granting a license to the said appellant to sell intoxicating liquors in said village. The complaint sets out facts showing that the present city is legally liable for all debts and demands against the former village, and then proceeds to set forth his claim against the village as follows:

"That, heretofore, to wit, on or about the 12th day of May, 1884, this plaintiff, who was then a resident of said village, made application in writing to the village board of trustees of said village of Viroqua for license to sell, in quantities less than one gallon, strong, spirituous, malt, ardent, or intoxicating liquors, to be drank on the premises, and filed said application with said village board; that said plaintiff was at that time ready and willing to pay for such

license into the village treasury of said village any lawful sum which the said board might determine to charge therefor.

"That at the next regular meeting of the said village board, held on the 13th day of May, 1884, the said village board resolved by vote to grant the application of this plaintiff to sell liquors in the quantity and in the manner aforesaid, and to issue license therefor; that under the law relating to the sale of intoxicating liquors the said village board of said village could not legally charge this plaintiff for such license any greater sum than two hundred dollars, but that said board, at their said meeting last aforesaid, without any authority of law therefor, passed a resolution, by the terms of which it was resolved that the price for license to sell, in quantities less than one gallon, strong, spirituous, malt, ardent, or intoxicating liquors, to be drank on the premises, should be $500.

"That afterwards this plaintiff filed with the village clerk of said village of Viroqua a bond according to all the conditions of sec. 1549, R. S. of Wisconsin, which bond was approved by said village board, and did, on the 22d day of May, 1884, pay to the village treasurer of said village the sum of $500; that said sum was unlawfully, illegally, and wrongfully exacted of this plaintiff by said village treasurer in pursuance of said unlawful and unauthorized resolution of the said village board to charge the sum of $500 for said license, and that the president and clerk of said village refused to issue to plaintiff any license to sell liquor in the manner and quantity aforesaid, until he first produced to said clerk a receipt from said treasurer showing the payment of said sum of $500; and that in order to obtain such receipt to obtain license to sell liquor and pursue the calling and business which said village board had by its resolution granted him the right to pursue, and which he had the lawful right to follow upon payment of no greater sum than

$200, plaintiff was compelled to and did pay said sum of $500; and that plaintiff was forced to pay said sum solely by reason of said unlawful and illegal resolution of said village board; and that the sum of $300 of said $500 was exacted of plaintiff in wilful violation of law, and without the consent of plaintiff, and was only paid by plaintiff to enable him to pursue his said business and earn a livelihood for himself.

"That said sum of $500 was so received by said treasurer by virtue of his office, and was converted by the said village to its own use, and that no part thereof has ever been repaid to plaintiff; that, upon such payment as aforesaid, the said village, by its proper officers, issued to plaintiff a license to sell liquor in the quantity and manner aforesaid within said village, and that plaintiff pursued said business until the expiration of the term of office of said village board."

To this complaint the respondent demurred on the ground that it does not state facts sufficient to constitute a cause of action. The demurrer was sustained, and afterwards judgment was entered in favor of the defendant for the costs of the action; and from such judgment and the order sustaining the demurrer the plaintiff appeals to this court.

For the appellant there was a brief by *Butt & Graves*, and oral argument by *Mr. Graves*. To the point that fees illegally exacted for the exercise of a privilege to which the party is entitled without such payment or upon payment of a less sum, may be recovered back, they cited *La Salle Co. v. Simmons*, 10 Ill. 513; *Ogden v. Maxwell*, 3 Blatchf. 319; *Robinson v. Ezzell*, 72 N. C. 231; *Catoir v. Watterson*, 38 Ohio St. 319; *Laterrade v. Kaiser*, 15 La. Ann. 296; *C. & A. R. Co. v. C., V. & W. Coal Co.* 79 Ill. 121; *Corkle v. Maxwell*, 3 Blatchf. 413; *G. W. R. Co. v. Sutton*, L. R. 4 H. L. Cas. 249; *Baker v. Cincinnati*, 11 Ohio St. 534; *Tuttle v. Everett*, 51 Miss. 27; *Ford v. Holden*, 39 N. H. 143; *Morgan v. Palmer*, 2 Barn. & C. 729; *Parker v. G.*

Custin vs. The City of Viroqua.

*W. R. Co.* 7 Mann. & G. 253; *Morgan v. Palmer*, 4 D. & R. 283; *Dew v. Parsons*, 2 Barn. & Ald. 562; *Clinton v. Strong*, 9 Johns. 370; *Moulton v. Bennett*, 18 Wend. 586; *Townshend v. Dyckman*, 2 E. D. Smith, 224; *Steele v. Williams*, 8 Exch. 625; *Am. Ex. F. Ins. Co. v. Britton*, 8 Bosw. 148; *Am. S. Co. v. Young*, 89 Pa. St. 186.

*O. B. Wyman*, for the respondent.

TAYLOR, J.  The learned counsel for the appellant claims that the demurrer should have been overruled for the reason that, at the time he paid the $500 to the village of Viroqua for a license to sell intoxicating liquors in said village, the village had no authority to demand or receive from him a greater sum than $200 for such license; that the resolution of said board fixing the sum of $500 as the price of such license was illegal and void, and that consequently the exaction of the sum of $500 was unlawful, wrongful, and illegal; and that the excess over $200 paid by him was unlawfully and illegally received by the said village, and that he ought to be permitted to recover the same from the village as money had and received for his use.

On the part of the respondent it is contended (1) that, under the laws of the state in force at the time the license was asked for and granted to the plaintiff by the village board, the village board had the lawful right to fix the price of such license at the sum of $500; and (2) if the village had not the legal right to fix the price of the license at $500, yet, having fixed it at that sum in good faith, believing they had such right under the existing law, and the plaintiff having paid the money voluntarily under such claim of right on the part of the village authorities, he cannot now recover it back, although the village authorities were wrong in their construction of the law and in fact had no lawful power to demand more than the sum of $200 as the price of such license.

The act in force regulating the granting such license at the time this license was granted to plaintiff, viz., in May, 1884, was ch. 322, Laws of 1882. Sec. 10 of said chapter reads as follows: "Section 1548 of chapter 66 of the Revised Statutes, entitled of excise and the sale of intoxicating liquors, is hereby amended by striking out the words twenty-five nor more than one hundred and fifty dollars, where they occur in the tenth line of said section, and inserting in lieu thereof the words seventy-five nor more than two hundred dollars, and by striking out the words ten nor more than forty dollars, where they occur in the twelfth line of said section, and inserting in lieu thereof the words twenty-five nor more than fifty dollars, so that said section, when so amended, shall read as follows: Section 1548. The town boards, village boards, and common councils of the respective towns, villages, and cities may grant license to such persons as they may deem proper to keep groceries, saloons, or places, within their respective towns, villages, or cities, for the sale in quantities less than one gallon of strong, spirituous, malt, ardent, or intoxicating liquors, to be drank on the premises, and in like manner may grant licenses for the sale in any quantity of such liquors, not to be drank on the premises; and the sum to be paid for such license for the sale of such liquors to be drank on the premises shall not be less than seventy-five dollars, and for the sale of such liquors not to be drank on the premises shall not be less than twenty-five dollars. All such licenses shall remain in force for the residue of the term of office of the board which shall grant such licenses, unless sooner revoked by the board granting the same; but this section shall not interfere with or change the provisions of any village or city charter in respect to the term of license. Such license shall be attested by the town, city, or village clerks, and shall not be delivered until the applicant shall produce to the clerk a receipt showing the payment of the sum required therefor to the proper town, village, or city treas-

urer, and the filing with such clerk of the bond provided for in the next section." ·

It is not claimed by the learned counsel for the respondent that there was anything in the village charter which authorized the village board to demand more for such license than the sums fixed by this section. We are very clear that the village board misconstrued this section in holding that it only fixed a minimum price for such licenses, and that the maximum was left to the discretion of the village board. Such construction is clearly in conflict with all laws theretofore passed by the legislature upon that subject, and is in conflict with that part of the section itself which undertakes to declare in what respects the existing law should be amended by that section. It is true the latter part of the section is in conflict with the alleged purpose of the legislature as declared in the first part; but we cannot conceive that if the legislature had intended to leave the maximum price of such licenses to the discretion of the town, city, and village authorities, it would have limited such maximum in declaring how the then existing law should be amended. The legislature first declares what the amendments to the existing section on the subject shall be, and then undertakes to recite how the section will read when so amended. In this recital there is evidently a mistake, and we think it the duty of the courts to carry out the clear intent of the legislature, and hold that the recital in the amendatory act of the statute as amended should be so construed as not to defeat the intent of the legislature, clearly expressed in that part of it which declares what the amendments to the existing law shall be. So construed, the village board was mistaken in supposing that it had, under the existing law, a legal right to fix the price of the license at $500.

Admitting, as we must, that the village board had no legal authority to demand $500 for the license granted to

the plaintiff, yet the village board having demanded such sum of the plaintiff under a claim of right, as they understood the law, and the plaintiff having paid such sum voluntarily in order to obtain his license, there being no allegation of fraud on the part of the board in making such claim, it is clear that the plaintiff cannot recover the money back from the village. The village did not act fraudulently in making its claim. It used no force or coercion. The plaintiff was at liberty to refuse to pay the sum so demanded, and, having paid it under such circumstances, the payment was clearly a voluntary payment, and it cannot be recovered back. See *Benson v. Monroe,* 7 Cush. 125, 131; *Emery v. Lowell,* 127 Mass. 138; *Cook v. Boston,* 9 Allen, 393; *Lee v. Templeton,* 13 Gray, 476; *Robinson v. Charleston,* 45 Am. Dec. 739; *S. C.* 2 Rich. Law, 317; *Brumagim v. Tillinghast,* 18 Cal. 271; *Champlin v. Laytin,* 18 Wend. 407; *Dickins v. Jones,* 27 Am. Dec. 488; *S. C.* 6 Yerg. 483; *Ligonier v. Ackerman,* 46 Ind. 552; *Clarke v. Dutcher,* 9 Cow. 674; *Natcher v. Natcher,* 47 Pa. St. 496; *Detroit v. Martin,* 34 Mich. 170; *Baltimore v. Lefferman,* 4 Gill, 425; *Town Council v. Burnett,* 34 Ala. 400; *Flower v. Lance,* 59 N. Y. 603, 610; *Baker v. Cincinnati,* 11 Ohio St. 534; *Harrison v. Milwaukee,* 49 Wis. 252; *Powell v. Sup'rs St. Croix Co.* 46 Wis. 210; *Parcher v. Marathon Co.* 52 Wis. 388; *Elston v. Chicago,* 40 Ill. 514; *Harvey v. Olney,* 42 Ill. 336.

It is said that the necessities of the plaintiff compelled him to pay the sum exacted; that it must be presumed that he was prepared to carry on the business for which he desired the license; and that, unless he obtained one, he would be greatly damaged, and that he was therefore under restraint. This argument was urged in the case of *Emery v. Lowell, supra.* The court answered this argument as follows: "We do not regard it as changing the character of the payment from voluntary to involuntary or compulsory,

Custin vs. The City of Viroqua.

that it is important to the party paying to get what he gets for the payment; in other words, that there should be an urgent need on his part. It is ordinarily and almost necessarily true that one pays what he regards as extravagant only for what then seems to him an important result, and submits to the demand for what he regards as an exorbitant or illegal fee only because there is an urgent need for what the payment will produce. It would be unsafe to have the question of recovering the money paid to depend on the urgency of the need of the party when paying it. The plaintiffs wished a license. They were at liberty to take it or not, as they saw fit. They paid the fee demanded, knowing all the facts in the case. A refusal to pay would have resulted merely in their not being licensed. They must be held to have paid voluntarily, and not under coercion."

The argument of the court in the above case is a complete answer to the plaintiff's claim in the case at bar. The plaintiff had the same knowledge of the law that the village board had. He either construed the law as the board did, and acknowledged the legality of their claim, or, if he construed the law as we now construe it, he knew, or was bound to know, that the demand made on him was an illegal demand. Knowing that fact, and desiring to engage in the business of selling intoxicating liquors in the village, he submitted to what he knew or might have known was an illegal demand, and paid his money in order to enjoy the profits of his business. In either case the payment was clearly voluntary, and he cannot, after he has enjoyed the benefits of the license received, recover the money back. Had he refused to pay the money, it is apparent he would not have obtained the license.

This case does not come within the rule of the cases which treat of the receipt of illegal fees for official services. The money in this case is demanded for the public use, it is in

the nature of a tax for revenue, and is in no sense received as fees for official service. There being no allegation in the complaint that the board acted fraudulently in demanding the money from the plaintiff, and the payment having been voluntarily made, the complaint does not state a cause of action.

*By the Court.*— The order and judgment of the circuit court are affirmed.