DeALMEIDA, J.T.C.
This opinion addresses whether the New Jersey gross income tax credit established in N.J.S.A. 54A:4-1 for taxes paid by residents to other jurisdictions is available to a New Jersey couple who paid income taxes to Pennsylvania on wages earned there, even though Pennsylvania ceded its authority to collect tax from New Jersey residents on employee compensation for the tax year in question. For the reasons explained more fully below, the court holds that the resident credit is not available in such circumstances because income taxes paid to a State that has relinquished its right to collect those taxes have not been “imposed” by a foreign jurisdiction within the meaning of N.J.S.A. 54A:4-1. Only those New Jersey residents whose income is actually subject to tax under the laws of both New Jersey and a foreign jurisdiction are entitled to the resident credit.
*283 This outcome is not changed by the fact that plaintiffs’ request for a refund of the taxes they paid to Pennsylvania, filed shortly after they were apprised of their error by New Jersey officials, was time-barred under Pennsylvania law. The resulting double taxation on plaintiffs’ income—by New Jersey which had an undisputed right to collect its tax and by Pennsylvania which accepted plaintiffs’ voluntary payment of tax that was not due—is a consequence of plaintiffs’ failure to follow unequivocal law and the operation of Pennsylvania’s statute of limitations on refunds, and not the result of any authority imposing tax on plaintiffs’ income in two jurisdictions. Statutes, regulations and publicly available documents in both New Jersey and Pennsylvania informed taxpayers that New Jersey residents who earned wages in Pennsylvania in 2003 were not subject to income tax in that State. Plaintiffs did not follow those directives and made a late request for a refund of the taxes paid to Pennsylvania. This court has no authority to visit the cost of plaintiffs’ errors on the Director, who has rightfully collected income tax from plaintiffs on wages they earned in Pennsylvania.
Finally, the court finds that the Director was without statutory authority to grant plaintiffs’ request for an abatement of interest. Plaintiffs’ mistake in paying income tax to Pennsylvania was compounded by their failure to report the Pennsylvania wages on their 2003 New Jersey gross income tax return. It was only after an audit by the Director that plaintiffs’ Pennsylvania income was reported to New Jersey. The Director exercised her authority to impose interest at the statutory minimum on the tax due on that income. While the parties agree that plaintiffs did not intentionally attempt to avoid their income tax obligation to New Jersey, the Legislature has not authorized the Director to reduce interest on overdue gross income tax below the level she assessed against plaintiffs.
I. Findings of Fact
The court finds the following facts. Plaintiffs Dr. Teimouraz Vassilidze and Nana Vassilidze are a married couple who reside in Watchung. During 2003, Dr. Vassilidze earned $174,546 in wages for services he performed as a physician employee for an anesthe *284 sia practice at Lehigh Valley Medical Center in Pennsylvania. Plaintiffs also earned $197,208 in income from sources outside of Pennsylvania.
Plaintiffs, with the assistance of an accounting firm, filed a 2003 Pennsylvania income tax return on which they reported the $174,546 earned by Dr. Vassilidze in that State. On their return, pláintiffs reported a Pennsylvania income tax liability of $4,887. Because precisely $4,887 had been withheld from Dr. Vassilidze’s paychecks on behalf of Pennsylvania, plaintiffs’ 2003 Pennsylvania income tax return showed a zero balance due.
Plaintiffs also filed a 2003 New Jersey gross income tax return. That return reported the $197,208 in income earned by plaintiffs outside of Pennsylvania. Plaintiffs did not include Dr. Vassilidze’s $174,546 in Pennsylvania wages on their New Jersey return. Nor did plaintiffs request a credit pursuant to N.J.S.A. 54A:4-1 for the taxes they paid to Pennsylvania.
During 2003, New Jersey and Pennsylvania were signatories to a Reciprocal Personal Income Tax Agreement in which each State agreed to cede its authority to impose income tax on the wages earned by the residents of the other State. As a result of the agreement, residents of New Jersey who earned wages in Pennsylvania in that year were not subject to income tax by that State. Their entire wages were, however, subject to taxation by New Jersey, their State of residence. The existence of the Reciprocal Personal Income Tax Agreement was well publicized by both States.
The instruction booklet to form PA-40IN 2003, the Pennsylvania income tax return filed by plaintiffs, expressly informed nonresident taxpayers of the existence of the Reciprocal Personal Income Tax Agreement and the procedure for seeking a refund of Pennsylvania income tax withheld from a non-resident’s paychecks. The instructions provided:
Pennsylvania has agreements with Indiana, Maryland, New Jersey, Ohio, Virginia and West Virginia. Generally, under these agreements, one state will not tax a resident ol‘ the other state on compensation that is subject to employer withholding. These agreements apply to employee compensation only. *285 If you are a resident of a reciprocal agreement state working in Pennsylvania, and your employer withheld PA income tax, you may request a refund of the PA tax. You report zero taxable compensation on Line la, and the PA tax withheld on Line 13. Submit a legible photocopy of your Form W-2, a signed copy of the resident income tax return that you iiled/will file with your resident state (without the supporting forms and schedules), and a statement explaining that you are a resident of a reciprocal agreement state.
[Pennsylvania Department of Revenue, PA-40IN ¿00.J Instructions Booklet, 10.[1]
Similarly, the Division of Taxation alerted New Jersey residents to the existence of the Reciprocal Personal Income Tax Agreement. The instructions to 2003 Form NJ-1040, the New Jersey gross income tax resident return filed by plaintiffs, informed taxpayers of the existence and significance of the Reciprocal Personal Income Tax Agreement. The instructions at page 41 provided:
Income From Pennsylvania. As a result of the Reciprocal Personal Income Tax Agreement between the Commonwealth of Pennsylvania and the State of New Jersey, compensation paid to New Jersey residents employed in Pennsylvania is not subject to the Pennsylvania income tax. Compensation means salaries, wages, tips, fees, commissions, bonuses, and other remuneration received for services rendered as an employee.
You may not claim a credit on Schedule A for taxes paid to Pennsylvania on compensation earned in Pennsylvania because these earnings are not subject to tax in Pennsylvania. If Pennsylvania income tax was withheld from your wages, you must file a Pennsylvania return to obtain a refund.[2]
[New Jersey Division of Taxation, ZOOS Form NJ-10M) Instructions, 41.J
The instructions are a more detailed explanation of N.J.A.C. 18:35-4.1(a)7:
*286 As a result of the Reciprocal Personal Income Tax Agreement between the Commonwealth of Pennsylvania and the State of New Jersey, wages, salaries and other compensation paid to New Jersey residents employed in Pennsylvania ai’e not subject to Pennsylvania income tax. Thus, a New Jei’sey resident may not claim a credit for taxes paid to Pennsylvania on employee compensation.
This regulation was in effect during all of 2004, the year in which plaintiffs filed their Pennsylvania and New Jersey income tax returns. See SB N.J.R. 3386(a) (July 21, 2003); 40 N.J.R. 4225(a) (July 7, 2008). The Division’s Bulletin GIT-3w, revised in October 2002, an excerpt from which is attached to the Complaint, contained similar language at page 8.
In addition, N.J.S.A. 54A:2-1 imposes a tax on the New Jersey gross income of every resident of the State. N.J.S.A. 54A:5-la includes in the New Jersey gross income of every resident “[s]alaries, [and] wages ... for services rendered____” This statute makes plain plaintiffs’ obligation to include Dr. Vassilidze’s Pennsylvania source income in their New Jersey gross income, whether or not those wages are subject to income tax in Pennsylvania.
On April 13, 2007, an auditor employed by the Division of Taxation issued a Notice of Deficiency informing plaintiffs that an audit of their 2003 New Jersey gross income tax return had been completed. In addition to a number of minor adjustments to plaintiffs’ income not at issue here, the Division increased plaintiffs’ gross income by $164,758 to reflect Dr. Vassilidze’s Pennsylvania income, which had been excluded from plaintiffs’ New Jersey income tax return. The amount attributable to Pennsylvania wages was slightly less than that reported on plaintiffs’ 2003 Pennsylvania return. The record does not reflect the reason for this difference. However, given that the Director reduced the amount of income from Pennsylvania sources, plaintiffs benefited from the reduction and the court will consider the difference immaterial. The auditor explained the inclusion of Dr. Vassilidze’s Pennsylvania earnings thusly: “All wages, regardless of where they are earned, are subject to the New Jersey Gross Income Tax.”
As a result of the audit adjustments, the Director assessed against plaintiffs $10,495 in New Jersey gross income tax, a $525 late payment penalty and $3,202 in interest to March 15, 2007. *287 Plaintiffs’ outstanding obligation at the time of the April 13, 2007 notice was $14,222.
On April 25, 2007, plaintiffs’ accountant responded to the Notice of Deficiency. The response conceded plaintiffs’ error in paying income tax to Pennsylvania and in excluding earning from plaintiffs’ New Jersey gross income. In addition, plaintiffs’ accountant asserted that because plaintiffs became aware of their error only by virtue of the Notice of Deficiency they “can no longer obtain a refund from the state of Pennsylvania since the statute of limitations has expired, effectively forcing him [sic] into a double jeopardy situation.” Characterizing plaintiffs’ situation as “double taxation due to procedural dogma,” plaintiffs’ accountant demanded that New Jersey provide a credit for the taxes paid by plaintiffs to Pennsylvania. In addition, plaintiffs’ accountant protested the assessment of three years’ interest on plaintiffs’ New Jersey tax liability, arguing that one year of interest would be appropriate, apparently because plaintiffs believe that the Director should have discovered plaintiffs’ error sooner.
On May 4, 2007, the Division’s auditor issued a letter to plaintiffs rejecting their request that the April 13, 2007 Notice of Deficiency be adjusted.
On October 11, 2007, after an administrative conference with plaintiffs, the Director issued a Final Determination. The Final Determination affirmed the conclusions set forth in the April 13, 2007 Notice of Deficiency and May 4, 2007 follow-up letter. Citing N.J.A.C. 18:35-4.1(a)7, the instructions of the 2003 Form NJ-1040 and the Director’s Bulletin GIT-3W, the Director rejected plaintiffs’ request for a credit for the income taxes paid to Pennsylvania, affirmed the penalty, and updated the interest to November 15, 2007. Plaintiffs’ total outstanding liability as a result of the October 11, 2007 Final Determination was $14,964.
On November 29, 2007, plaintiffs filed a Complaint in this court challenging the October 11, 2007 Final Determination. A corrected Complaint was filed on March 24, 2008. In their pleadings, plaintiffs do not contest the fact that Dr. Vassilidze’s Pennsylvania income is subject to the New Jersey gross income tax. However, *288 plaintiffs challenge the Director’s denial of their request for a credit for the taxes they paid to Pennsylvania on that income, as well as the Director’s assessment of interest.
On June 18, 2008, the Director moved for summary judgment. The court heard oral argument from the parties on July 25, 2008.
II. Summary Judgment Standard
“Summary judgment should be granted where ‘the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the nomnoving party is entitled to a judgment or order as a matter of law.’ ” Alpha I, Inc. v. Director, Div. of Taxation, 19 N.J.Tax 53, 56 (Tax 2000) (citing R. 4:46-2). In Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523, 666 A.2d 146 (1995), our Supreme Court established the standard for summary judgment as follows:
[W]hen deciding a motion for summary judgment under Rule 4:46-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
The court finds that there are no disputed material facts in this matter. In compliance with R. 4:46-2(a), in support of her motion for summary judgment the Director filed a statement of material facts as to which she contends there is no dispute. Although R. 4:46—2(b) requires a party opposing summary judgment to submit a statement either admitting or denying each of the material facts listed in the moving party’s statement, plaintiffs did not comply with this rule. The court interprets plaintiffs’ failure to dispute any of the facts in the Director’s statement as a concession that those facts are true. At oral argument, plaintiffs were apprised of the court’s understanding that the parties were in agreement as to the facts giving rise to the matter. Plaintiffs made no objection. The parties’ claims, therefore, are ripe for resolution.
*289 III. Conclusions of Law
The court’s analysis begins with the familiar principle that the Director’s interpretation of tax statutes is entitled to a presumption of validity. “Courts have recognized the Director’s expertise in the highly specialized and technical area of taxation.” Aetna Burglar & Fire Alarm Co. v. Director, Div. of Taxation, 16 N.J.Tax 584, 589 (Tax 1997) (citing Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 327, 478 A.2d 742 (1984)). The scope of judicial review of the Director's decision with respect to the imposition of a tax “is limited.” Quest Diagnostics, Inc. v. Director, Div. of Taxation, 387 N.J. Super. 104, 109, 903 A.2d 442 (App.Div.), certif. denied, 188 N.J. 577, 911 A.2d 69 (2006). The Supreme Court has directed the courts to accord “great respect” to the Director’s application of tax statutes, “so long as it is not plainly unreasonable.” Metromedia, supra, 97 N.J. at 327, 478 A.2d 742. See also GE Solid State, Inc. v. Director, Div. of Taxation, 132 N.J. 298, 306, 625 A.2d 468 (1993) (“Generally, courts accord substantial deference to the interpretation an agency gives to a statute that the agency is charged with enforcing.”)
In addition, a regulation promulgated by the Director must be upheld unless the taxpayer can demonstrate that the regulation is “arbitrary, capricious, unduly onerous or otherwise unreasonable.” Sorensen v. Director, Div. of Taxation, 184 N.J.Super. 393, 2 N.J.Tax 470, 476, 446 A.2d 213 (Tax 1981) (citing New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 384 A.2d 795 (1978)). Only a regulation that is “out of harmony with the statute” will be invalidated by the court as exceeding delegated authority to interpret the law. Ibid. A regulation “within the fair contemplation of the delegation of the enabling legislation” will be upheld. Ibid.
A. The Resident Credit Statute
N.J.S.A. 54A:4-1 defines the parameters of the credit for residents who pay income tax to New Jersey and another jurisdiction on the same earnings:
*290 (a) A resident taxpayer shall be allowed a credit against the tax otherwise due under this act for the amount of any income tax or wage tax imposed for the taxable year by another state of the United States or political subdivision of such state, or by the District of Columbia, with respect to income which is also subject to tax under this act____
[emphasis supplied].
The objective of N.J.S.A. 54A:4-1 is to “protect from double taxation the non-New Jersey source income taxed by another jurisdiction.” Jenkins v. Director, Div. of Taxation, 184 N.J.Super. 402, 4 N.J.Tax 127, 133, 446 A.2d 217 (Tax 1982). “The statutory scheme minimizes or avoids double taxation based on what is actually, not potentially, taxed.” Nielsen v. Director, Div. of Taxation, 4 N.J.Tax 438, 443 (Tax 1982) (citation omitted). “The credit is available to New Jersey residents for any income tax or wage tax imposed by another state with respect to income which is also subject to tax by New Jersey.” Sorensen, supra, 184 N.J.Super. 393, 2 N.J.Tax at 471, 446 A.2d 213. The statute “shield[s] only that portion of the taxpayer’s income which is subject to tax in the other state.” Ambrose v. Director, Div. of Taxation, 198 N.J.Super. 546, 553, 487 A.2d 1274 (App.Div.1985). As the Appellate Division explained, “we perceive a clear legislative design to limit the credit to income actually subject to taxation in the foreign jurisdiction.” Ibid, (citation omitted); accord Chin v. Director, Div. of Taxation, 14 N.J.Tax 304, 308-09 (Tax 1994).
As noted above, the Director promulgated a regulation addressing the application of the resident credit statute in the context of wages earned in Pennsylvania. N.J.A.C. 18:35-4.1(a)7 provides:
As a result of the Reciprocal Personal Income Tax Agreement between the Commonwealth of Pennsylvania and the State of New Jersey, wages, salaries and other compensation paid to New Jersey residents employed in Pennsylvania are not subject to Pennsylvania income tax. Thus, a Neto Jersey resident may not claim a credit for taxes paid to Pennsylvania on employee compensation.
[ (Emphasis supplied).]
The regulation plainly precludes award of the credit in the circumstances presented by this case.
Although this court has examined N.J.S.A. 54A:4-1 in a number of contexts, no published opinion decides the validity of N.J.A.C. 18:35-4.1(a)7 and its declaration that the resident credit is not available for taxpayers who pay income tax to Pennsylvania *291 despite the unambiguous mandate of the Reciprocal Personal Income Tax Agreement. The explicit language of N.J.S.A. 54A:4-1, however, along with this court’s consistent approach to permit the credit only where income is actually subject to tax in New Jersey and a foreign jurisdiction, leads this court to conclude that N.J.A.C. 18:85-4.1(a)7 is a valid exercise of the Director’s authority and a reasonable interpretation of the statute.
N.J.S.A. 54A:4-1 allows the credit only in those circumstances in which an income tax is “imposed” by a foreign jurisdiction. Statutory construction begins with consideration of the statute’s plain language. Merin v. Maglaki, 126 N.J. 430, 434, 599 A.2d 1256 (1992). “A statute should be interpreted in accordance with its plain meaning if it is clear and unambiguous on its face and admits of only one interpretation.” Board of Educ. v. Neptune Twp. Educ. Ass’n, 144 N.J. 16, 25, 675 A.2d 611 (1996) (quotations omitted) (citation omitted). “[T]he best approach to the meaning of a tax statute is to give to the words used by the Legislature their generally accepted meaning, unless another or different meaning is expressly indicated.” Public Serv. Elec. & Gas Co. v. Township of Woodbridge, 73 N.J. 474, 478, 375 A.2d 1165 (1977) (quotations omitted) (citation omitted). “The duty of the Director, and this court, is to give meaning to the wording of the statute and, where the words used are unambiguous, apply its plain meaning in the absence of a legislative intent to the contrary.” Sutkowski v. Director, Div. of Taxation, 312 N.J.Super. 465, 475, 712 A.2d 229 (App.Div.1998).
The Legislature’s use of the word “imposed” to qualify the circumstances in which the resident credit is applicable is amenable to only one interpretation. A tax is “imposed” by a foreign jurisdiction within the meaning of N.J.S.A. 54A:4-1 if the foreign levy is required to be paid by a duly enacted statute, regulation or other exercise of governmental authority. This interpretation of the word “imposed” is consistent with its common meaning, as evidenced by dictionary definitions: “1. To establish or apply as compulsory; levy: impose a tax. 2. To apply or make prevail by or as if by authority: impose a peace settlement.” The *292 American Heritage Dictionary of the English Language, (4th Ed. 2000). The voluntary payment of a tax where no law requires such a payment does not constitute the imposition of that tax.
This interpretation of N.J.S.A. 54A:4-1 is also consistent with legislative intent, as repeatedly recognized by this court, to lessen the burden of the New Jersey gross income tax on residents whose non-New Jersey source income is actually subject to tax by another jurisdiction. In those instances in which the credit was claimed with respect to income that was not actually subject to tax by the laws of another jurisdiction, this court has held that N.J.S.A. 54A:4-1 does not apply. See Ambrose, supra (disallowing credit where New York State law excluded alimony payments from adjusted gross income, thereby insulating those payments from income tax in New York State); Nielsen, supra (same). Here, plaintiffs were not actually subject to income tax in Pennsylvania. In fact, the law expressly provided otherwise.
Pennsylvania law excludes in plain terms the employment income of New Jersey residents from income tax. Pennsylvania issued instructions to the income tax return used by plaintiffs informing New Jersey residents that the compensation they earn in Pennsylvania is not subject to income tax in that State. It was despite these official efforts, not because of them, that plaintiffs voluntarily paid income tax to Pennsylvania. The Legislature did not intend for N.J.S.A. 54A:4-1 to apply when taxpayers voluntarily pay income tax to a State that has relinquished any claim to the tax and made public efforts to inform taxpayers that the tax is not due.
To grant plaintiffs a credit in this case would in effect reverse the substantive provisions of the Reciprocal Personal Income Tax Agreement by allowing Pennsylvania to tax Dr. Vassilidze’s Pennsylvania source wages and granting plaintiffs an exemption from taxation in New Jersey on those earnings. This court has cautioned against the use of N.J.S.A. 54A:4-1 to allow for exclusions from taxation not contemplated by the Legislature. Berlin v. Director, Div. of Taxation, 13 N.J.Tax 405, 411 (Tax 1993) (rejecting interpretation of N.J.S.A. 54A:4-1 that would in effect permit *293 deduction not authorized by New Jersey law). Plaintiffs seek application of N.J.S.A. 54A:4-1 in a manner not in accord with the statute’s purpose.[3]
B. Plaintiff’s Pennsylvania Refund Request
The fact that plaintiffs became aware of their error near or after expiration of the statutory time period for seeking a refund from Pennsylvania does not justify award of the resident credit provided in N.J.S.A. 54A:4-1. Plaintiffs argue that even though they were not required by Pennsylvania law to pay income tax, they did pay the Pennsylvania tax, and because they are time barred from receiving a refund, they have actually been taxed by that State. Thus, they contend, it would be inequitable and contrary to the intent of N.J.S.A. 54A:4-1 to deny them the credit. A similar argument was rejected by this court in Estate of Guzzardi v. Director, Div. of Taxation, 15 N.J.Tax 395 (Tax 1995), affd, 16 N.J.Tax 374 (App.Div.1996), a holding that the court finds persuasive here.
In Guzzardi, supra, the taxpayer was a resident of Pennsylvania in 1981 when she received proceeds from the sale of real estate, secured by notes. Id. at 398. For federal tax purposes, she reported the income on an installment basis, reporting each payment on the notes as income in the years in which the payments were received. Pennsylvania, however, did not recognize the installment method of reporting income. As a result, the taxpayer reported her entire gain from the sale on her 1981 Pennsylvania return and paid income tax on the full amount of consideration from the sale, including future payments. Ibid.
The taxpayer moved to New Jersey sometime after 1981. In 1988, while the taxpayer was a resident of New Jersey, she *294 received final payments on the notes. The taxpayer did not report the 1988 payments on her New Jersey resident return under the theory that she had already paid State income tax on those pi’oceeds to Pennsylvania when she was required to report the full proceeds of the sale to that State in 1981. Id. at 398-99. The taxpayer also contended that if she was required to report the 1988 payments on her New Jersey return, 'she was entitled to a credit pursuant to N.J.S.A. 54A:4-1 for the taxes she paid on that income to Pennsylvania in 1981. Id. at 399. To deny the credit, the taxpayer argued, would result in her unfairly being subject twice to State income tax on the 1988 payments—first by Pennsylvania in 1981 and second by New Jersey in 1988.
Judge Hamill rejected the taxpayer’s arguments. The court found that the taxpayer’s double taxation was the result of the operation of Pennsylvania law, not the unavailability of the resident credit established in N.J.S.A. 54A:4-1:
[T]he double taxation of [taxpayer’s] installment sale gain results from Pennsylvania’s refusal to recognize installment sale accounting in the year when the sale took place. Under Pennsylvania’s personal income tax as in effect in 1981, regardless of when [taxpayer] moved to New Jersey, the 1988 installment sale gain at issue here would always have been doubly taxed. In fact, any installment received after the year of sale when the entire gain was taxed by Pennsylvania would be taxed again by a state that recognized installment sale reporting.
Ud. at 408-09.]
Similarly, in this case, double taxation of Dr. Vassilidze’s Pennsylvania source income is the result of Pennsylvania’s statute of limitations precluding plaintiffs from receiving a refund of the income taxes they submitted to that State. N.J.S.A. 54A:4-1 is designed to address situations where a New Jersey resident’s income is actually subject to tax by this State and a foreign jurisdiction. The court lacks authority to rewrite the statute to address any inequities visited upon New Jersey residents as a result of the application of another State’s statute of limitations for refund claims, particularly where the taxpayer’s original submission of income tax to the foreign jurisdiction was contrary to the unambiguous laws of the foreign State.[4]
*295 C. The Director’s Assessment of Interest
N.J.S.A. 54:49-3 requires the Director to assess interest on any late payment of gross income tax. The statute provides:
Any taxpayer who shall fail to pay any State tax on or before the day when the same shall be required by law to be paid shall pay in addition to the tax, unless otherwise provided in the law imposing such tax, interest and penalty, if any, on said tax at the rate of three percentage points above the prime rate assessed for each month or fraction thereof, compounded annually at the end of each year, from the date the tax was originally due until the date of actual payment.
[N.J.SA. 54:49-3.]
N.J.S.A. 54:49-lla vests the Director with authority to waive or remit interest in certain circumstances. That statute states:
If the failure to pay any such tax when due is explained to the satisfaction of the director, [the Director] ... may remit or waive the payment of any interest charged in excess of the rate of three percentage points above the prime rate____
[N. J.S.A. 54:49-lla.]
These provisions are included in the State Uniform Tax Procedure Law, N.J.S.A. 54:48-1 through 54:53-15, and are expressly made applicable to the gross income tax by N.J.S.A. 54A:9-5(a).
In light of the fact that the only authorized rate of interest for gross income tax cases is three percentage points above the prime rate, the rate assessed by the Director in this case, the Director was without statutory authority to grant plaintiffs’ request to remit the interest assessment further. N.J.S.A. 54:49-lla limits the Director’s discretion in remitting interest at three points above the prime rate. Thus, this is not a situation in which the Director is authorized to assess interest within a range *296 of percentage points and may remit the interest rate to the minimum rate when satisfied that a taxpayer acted reasonably in not paying a tax in a timely fashion. See Patel v. Director, Div. of Taxation, 13 N.J.Tax 509 (Tax 1993); Media Graphics, Inc. v. Director, Div. of Taxation, 7 N.J.Tax 23, 32-33 (Tax 1984), aff'd, 8 N.J.Tax 321 (App.Div.1986).
Moreover, even if the Director had discretion to reduce the interest assessment below the rate imposed, plaintiffs failed to establish that they acted reasonably when they did not report Dr. Vassilidze’s Pennsylvania source income on their 2003 New Jersey gross income tax return. Where “there were multiple published statements available to the plaintiff that stated in clear terms” the applicable tax provisions and those statements were “either ignored by, or unknown to plaintiff’ a denial of the abatement of interest by the Director will be upheld. Tozour Energy Sys. v. Director, Div. of Taxation, 23 N.J.Tax 341, 359 (Tax 2007). Such was the case here. Both Pennsylvania and New Jersey made available to' plaintiffs numerous statements, forms and instructions plainly stating that Dr. Vassilidze’s Pennsylvania source income was not subject to tax in that State, but was subject to New Jersey gross income tax.
Finally, there is no merit to plaintiffs’ argument that interest should be limited to one year’ because the Director should have acted more expeditiously in uncovering plaintiffs’ error. Pursuant to N.J.S.A. 54A:9-4(a), the Director may assess gross income tax “within 3 years after the return was filed.... ” A return filed prior to the statutory filing deadline is deemed to have been filed on the last day of the permissible filing period. The filing deadline for New Jersey gross income tax is April 15th following the close of the tax year in question. N.J.S.A. 54A:8-la. Thus, in this case the filing deadline for plaintiffs’ 2003 New Jersey gross income tax return was, at the earliest, April 15, 2004.
Although the record does not contain plaintiffs’ 2003 New Jersey gross income tax return, nor evidence of the date on which it was filed, the Notice of Deficiency was issued on April 13, 2007, which was within three years of April 15, 2004. The Director, *297 therefore, acted within the statutory time for assessing gross income tax against plaintiffs for 2003. There is no authority for plaintiffs’ contention that the Director was under an obligation to assess tax against them at any point sooner than the expiration of the statutory period for doing so.
A judgment dismissing the Complaint and affirming the Final Determination of the Director will be issued by the Tax Court Clerk.

 Although no party submitted a verified copy of the instruction booklet to PA-40IN 2003, the court discovered that document on the website maintained by the Pennsylvania Department of Revenue at l¡ttp./hmw.reveniie.i>tate.pa.us/revcmie/ lihIreveuml20Q3-pa-40-mst.pdf. The parties were given notice of the court's intention to rely on the instruction booklet and an opportunity to object to or comment thereon.

 Although neither party submitted a verified copy of the instructions to 2003 Form NJ-1040, the court discovered that document on the website maintained by the Division of Taxation at http:llww\v.state nj.us/treasuryltaxatiun/pdflother— formsltgi-eel2003l031040i.pdf. The parties were given notice of the court's intention to rely on the instructions and an opportunity to object to or comment thereon.

 This opinion does not address the question of whether the resident credit provided by N.J.S.A. 54A:4-1 is available to a taxpayer who, under a reasonable interpretation of a foreign jurisdiction's laws, pays that jurisdiction income tax which the Director, under a different interpretation of the foreign jurisdiction's laws, contends was not actually due. The parties agree that Pennsylvania law did not require the submission of income tax by plaintiffs.

 Plaintiffs’ April 25, 2007 response to the April 13, 2007 Notice of Deficiency argues that the United States Constitution "guarantees that no individual shall *295 have to pay state tax to more than one state on the same income" and their Complaint alleges that denial of the resident credit creates "a double jeopardy situation." No cogent constitutional arguments, however, were advanced by plaintiffs in opposition to summary judgment. Nor does the court perceive any constitutional deficiencies in the Director's Final Determination. There is no legal precedent requiring a State to enact a credit for residents who are subject to income tax in other jurisdictions. See Guzzardi, supra, 15 N.J.Tax at 407. Of course, New Jersey, having elected to provide such a credit, must comply with the United States and New Jersey Constitutions in its administration. Nothing in the record suggests the violation of any provision of either Constitution by the Director's decision here. Finally, it has long been accepted that the Double Jeopardy Clause applies only in the criminal context. Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct 630, 82 L.Ed. 917 (1938).