PUBLIC SERVICE ELECTRIC & GAS COMPANY, PETI-
TIONER-RESPONDENT, v. TOWNSHIP OF WOODBRIDGE
IN THE COUNTY OF MIDDLESEX, A MUNICIPAL COR-
PORATION OF THE STATE OF NEW JERSEY, RESPON-
DENT-APPELLANT.

Argued March 8, 1977—Decided June 28, 1977.

Mr. *Arthur W. Burgess* argued the cause for respondent-appellant.

Mr. *Howard T. Rosen* argued the cause for petitioner-respondent (*Messrs. Rosen and Weiss,* attorneys; *Mr. Walter G. Reinhard* and *Mr. William J. Balcerski* on the brief).

Mr. *Peter D. Pizzuto,* Deputy Attorney General, argued the cause for *amicus curiae* New Jersey Division of Taxation (*Mr. William F. Hyland,* Attorney General of New Jersey,

attorney; *Mr. Stephen Skillman,* Assistant Attorney General, of counsel).

The opinion of the court was delivered by

CONFORD, P. J. A. D., Temporarily Assigned. We granted certification in this matter, 70 *N. J.* 525 (1976), to resolve the uncertainty created by inconsistent decisions of different parts of the Appellate Division concerning the local taxability of structures housing energy generating apparatus of electric light and power companies under *N. J. S. A.* 54: 30A–49 *et seq.* That act provides for the imposition by the State of excise and franchise taxes measured by the gross receipts of certain enumerated types of public utilities and for the apportionment of the net proceeds thereof among the municipalities wherein or in whose streets "scheduled property" of the utility is situated.

The legal issue revolves about the meaning of the term "real estate," which, as defined by the act, is taxable locally in the same manner as similar property of others. *N. J. S. A.* 54:30A–50 and 52. The definition (sec. 50) reads:

Definitions: As used in this act —

(b) "Real estate" means lands and buildings, but it does not include railways, tracks, ties, lines, wires, cables, poles, pipes, conduits, bridges, viaducts, dams and reservoirs (except that the lands upon which dams and reservoirs are situated are real estate) machinery, apparatus and equipment, notwithstanding any attachment thereof to lands or buildings.

In *N. J. Power & Light Co. v. Denville Tp.,* 80 *N. J. Super.* 435 (App. Div. 1963), the court held that concrete block buildings of an electric light company which housed machinery, equipment and apparatus were nevertheless locally taxable "buildings" within the letter and intent of the definition section of the statute quoted above. In the present case, to the contrary, the Appellate Division held similar structures of the respondent utility not to be taxable buildings because they are "adapted and adaptable only to shelter and

support generating equipment" and are therefore, in effect, "Electric Generating Stations"—a statutory unit with a scheduled valuation, see *N. J. S. A.* 54:30A-58, and hence part of the "machinery, apparatus and equipment" exempt from direct property taxation under the act. 139 *N. J. Super.* 1 at 11-12.

Before pursuing the exemption theory of the Appellate Division in this case we note that the structures in question do more than "provide necessary and essential shelter for the equipment they house," 139 *N. J. Super.* at 16. According to the proofs, the structures are also work-places for personnel. There are control rooms which are heated and air-conditioned and contain toilets as well as separate areas for instrument repair work. Maintenance work goes on in all the buildings. Compare *N. J. Power & Light Co. v. Denville Tp., supra,* 80 *N. J. Super.* at 439.

The theory of the Appellate Division was that the statute contemplates two kinds of "buildings," those which directly contribute to the generation of power or light and those which do not. The former are intended as exempt equipment and not as locally taxable "buildings" within *N. J. S. A.* 54:30A-50. 139 *N. J. Super.* at 11, 14. Only the latter kind of building is taxable, *e.g.,* in the present case, the so-called administration building. *Id.* at 16-17.

It is elementary that in the area of construction of statutes, particularly those having to do with taxation or exemption therefrom, our sole guidepost is the legislative intent. We can have no concern, short of constitutional considerations, with the wisdom or policy of a taxing statute. We agree with the view expressed in the *N. J. Power & Light Co.* case, *supra,* that the best approach to the meaning of a tax statute is to give to the words used by the Legislature "their generally accepted meaning, unless another or different meaning is expressly indicated." 80 *N. J. Super.* at 440. Applying the generally accepted meaning of the word "building," the court found it to include structures of the

kind there and here involved. *Ibid.* We agree. The defini-
tion of "building" cited by the court was:

A 'building' in the usual and ordinary acceptation of the word is
a structure designed and suitable for habitation or sheltering human
beings and animals, *sheltering or storing property, or for use and
occupation for trade or manufacture.*

(emphasis added).

We find nothing in the language, purpose or history of
the statute to indicate that the Legislature sought in this
enactment to differentiate between buildings directly involved
in the generation of light and power and buildings indirectly
or not at all so involved. Presumptively, all utility buildings
at the site of, and used in connection with, the operation of a
power generating or transmission plant contribute, directly
or indirectly, to the production, generation or transmission
of power. Nevertheless, they are all unqualifiedly rendered
subject to local taxation by the statute.

It appears to us that the act affirmatively reveals an intent
that the criteria for taxability of a structure as a building
should not include the element of affixation or attachment
between equipment or apparatus and the housing structure —
a circumstance to which the Appellate Division gave great
weight. 139 *N. J. Super.* at 6–7. As will be noted from the
statutory definition of "real estate," *supra,* there is an express
exclusion from "lands and buildings" of all "machinery, ap-
paratus and equipment, notwithstanding any attachment
thereof to lands or buildings." *N. J. S. A.* 54:30A–50(b).
The fact that the statute is at pains to show intent to exempt
apparatus and equipment despite attachment to a building
while not showing comparable intent also to exempt the
building to which the equipment or apparatus is attached
would seem clear evidence that buildings were contemplated
for local assessment regardless of the extent of "integration"
thereof with equipment by attachment, affixation or func-
tional use.

██ It would seem that the Appellate Division was led to its decision here, at least in part, by what we regard as a misapprehension of the purpose and intent of a portion of *N. J. S. A.* 54:30A–52. That section is set forth in the Appellate Division opinion as follows, the emphasis indicated being that of that court (139 *N. J. Super.* at 10):

All the real estate as herein defined, and the electric and gas appliances to be used for the consumption of gas or electricity and held for resale and *not for the purpose of production, transmission or distribution of gas or electric energy*, and by-products of gas manufacture held for resale and *not for the purpose of production, transmission or distribution of gas or electric energy*, owned or held by any taxpayer shall be assessed and taxed at local rates in the manner provided by law for the taxation of *similar property owned by other corporations* or individuals, and all proceedings for appeal, review and collection available to municipalities and other corporations or individuals with respect to *similar* property shall be applicable.

After paraphrasing the portion of the section allowing the local taxation of certain appliances and by-products of gas manufacture held for resale and not for production, transmission or distribution of gas or electric energy, the court said (*id.* at 11):

Distilled from this critical provision is the concept which renders locally taxable that real property not directly used in the production, transmission, or distribution of gas or electric energy. Conversely, real property so used and which therefore generates the gross receipts upon which the State levies the tax shared by the municipalities accommodating such utility, is exempt.

The foregoing observation seems to us unsound. The purpose of the emphasized provisions in *N. J. S. A.* 54:30A–52 was to assure local taxability of merchandise held for resale in the same manner as the stock in trade of any other manufacturer or dealer. The further qualification, "and not for the purpose of production, transmission or distribution of gas or electric energy," etc., was simply to strictly assure that only such appliances as were held solely for sale as

merchandise and not for any other public utility purpose could be locally taxed. It is a far cry from that intent and object to deduce a purpose to hypothesize two kinds of buildings — one, *directly* used for generation, etc. of energy, to be exempted from local taxation, and another, not so used, and permitted to be locally taxed. The statutory provision emphasized by the Appellate Division has obvious reference only to electric and gas appliances and to by-products of gas manufacture, not at all to real estate of any kind.

Furthermore, as well pointed out by the appellant taxing district, the provision of section 52 pinpointed by the Appellate Division involves only *gas and electric* appliances and has no significance insofar as concerns any other utilities encompassed by the statute such as water, street railway, etc. Since the legislative intent as to local taxation of buildings, whatever that intent may have been, certainly had to be uniform as to all categories of utilities coming under the statute, the special references in section 52 to gas and electric appliances, etc., not used for production, transmission, etc. of gas or electric energy, can serve no interpretive purpose in relation to the statutory intent as to local taxation of buildings of public utilities, generally, within the purview of the statute.

We were advised at oral argument that the structures here involved, some of which were built as early as 1948, have always been assessed locally in Woodbridge as realty without contest by the respondent utility at any time before the instant litigation. It is not suggested that similar structures in the utility industry have not also been generally considered realty and assessed as such in other taxing districts where situated. Such a continuous course of practical construction of a tax statute without legislative change, has considerable weight in judicial construction thereof. *State v. State Board of Tax Appeals,* 134 *N. J. L.* 34, 46, 48 (Sup. Ct. 1946), aff'd 135 *N. J. L.* 481, 482 (E. & A. 1947). It has been observed that " * * * [t]here ought to be a certain degree of stability in tax assessments." *D., L. & W. R. R.*

Co. v. City of Hoboken, 16 N. J. Super. 543, 553 (App. Div. 1951), rev'd on other grounds, 10 N. J. 418 (1952). In this regard, we think that the long continued practical construction of this statute by all concerned, particularly when consistent with the ordinary meaning of the legislative language and fortified by the confirming decision in N. J. Power & Light Co., supra, ought not now to be abruptly altered by the Judiciary. The drastic fiscal effect of such a change on this and other municipalities where similar utility property is situated suggests the wisdom of leaving changes in the previous generally accepted construction of the act, if any are thought to be needed, to the Legislature.

The Attorney General has filed a brief amicus curiae on behalf of the State Division of Taxation which takes the position that the legislative history of the act indicates that the Appellate Division correctly construed the statute. We are not persuaded. The argument is that the present act intends that all property "scheduled" for valuation for purposes of apportionment of tax receipts to the municipalities is intended for exemption from local ad valorem taxation as already theoretically taxed indirectly through the gross receipts tax. With that much of the submission we are in accord. But there then follows the assertion that since "Electric Generating Stations" are scheduled by the act, and since such stations include the buildings in which they are housed, the buildings are also "scheduled" property and consequently exempt from local taxation. The second stated premise is purely conclusional and begs the whole issue of statutory intent involved herein and discussed above as to the significance of the express provision for local assessment of "buildings." We find nothing in the history of this statute or of its predecessors which supports the determination of the Appellate Division. See Hoboken v. Martin, 123 N. J. L. 442 (E. & A. 1939); Jersey City v. Martin, 126 N. J. L. 353 (E. & A. 1941).

We hold that all the structures in question are taxable locally as real estate.

The appellant taxing district also challenges the determinations of the Appellate Division as to valuation of the buildings, specifically in relation to the appropriate rate of depreciation. We are in accord with the reasoning and conclusions of the Appellate Division with respect to this phase of the case. 139 *N. J. Super.* at 21.

The judgment of the Appellate Division is reversed with respect to local taxability of buildings. It is affirmed as to the matter of valuation. The cause is remanded to the Appellate Division for disposition consistent with this opinion. Costs to appellant taxing district.

HUGHES, C. J., and PASHMAN, J., dissenting; We would affirm the judgment of the Appellate Division substantially for the reasons expressed in the opinion of Judge Morgan, reported at 139 *N. J. Super.* 1.

*For affirmance in part and reversal in part* — Justices MOUNTAIN, SULLIVAN, CLIFFORD and SCHREIBER and Judge CONFORD — 5.

*For affirmance* — Chief Justice HUGHES and Justice PASHMAN — 2.